```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
                                        :
UNITED STATES OF AMERICA,
                                        :
        Plaintiff,
                                        :       02-CR-110-S
        v.
                                        :
MARIA GARCIA (a/k/a "Chabela"),
ELIAS BOTELLO,                          :
JOSE J. GARCIA (a/k/a "JJ"),
JOSE I. GARCIA,                         :

        Defendants.                     :
```

**UNITED STATES' RESPONSE TO
DEFENDANT MARIA GARCIA'S 11/26/2004 MOTION TO SUPPRESS**

The United States, by and through undersigned counsel, respectfully submits this response to the motion filed on November 26, 2004, by defendant Maria Garcia seeking to suppress any in-court identification of the defendant based upon a claim that the out-of-court identification procedures were unduly suggestive. The motion must be denied, and no hearing is needed, since the accompanying affidavit of ICE Special Agent Kevin R. Ryan makes clear that the procedure used to show photographs was not suggestive, much less unduly suggestive, and further, that the facts of this case make clear that the witnesses have an independent basis for any in court identification.

As the government has previously noted, the initial inquiry is to determine whether the pre-trial identification procedures were

unnecessarily suggestive, Maldonado-Rivera 922 F.2d 934, 973 (2d Cir. 1990).  If they were not, the challenge will be denied, and the reliability of the witness identification is a question only for the jury.  See Jarrett v. Headley, 802 F.2d 34 (2d Cir. 1986)

Although the defendant's motion is rife with speculation concerning the manner in which the photo book was shown, the affidavit of Kevin Ryan sets forth the neutral and reasonable manner in which the photos were shown.  As the affidavit of Ryan makes clear, the procedures used were not at all suggestive.  The witnesses were not asked to identify any certain individuals, or pick out anyone by name.  Rather, the witnesses were asked only if they knew, or thought they knew the person depicted, and then, provide information about that knowledge.  The witnesses were shown photographs one after the next, in a neutral and non-suggestive manner.  As a result, the Court should find that the photos were not shown in a suggestive manner, much less an unnecessarily suggestive manner, and leave the reliability of any witness identification to the jury.

At this point, the Court need not reach the issue of an independent basis for an identification, since the pretrial identification procedures were not impermissibly suggestive.  Manson v. Brathwaite, 432 U.S. 98 (1977).  It is clear, however,

that even if the pre-trial showing of photographs was unnecessarily suggestive, the facts of this case, taken from the allegations in the Indictment, the discovery provided, and the Jencks material provided, demonstrate that each of the witnesses had ample basis to see, speak with and interact with the various defendants, ensuring that any in court identification is independently reliable.  United States v. Maldonado-Rivera 922 F.2d 934 at 973 (2d Cir. 1990).

One challenge the defendant makes to the independent basis for the witness testimony is the claim that the period of time between the witnesses' work for Maria Garcia, and the dates on which they viewed photographs make any in-court identification inherently unreliable.  That simply is insufficient to challenge the independent basis of a witness' identification.  The defendants were not viewed fleetingly by the witnesses in this case.  The crime here was in the working and travel conditions experienced by the victims.  They traveled with, worked for, spoke with and interacted with the defendants over a period of time spanning from days to weeks.  These witnesses clearly have an independent and reliable basis for any in-court identification, regardless of when the identification occurred.

Indeed, the time between the witnesses' work and any pre-trial identification does not make the pre-trial identification suggestive, and the time lapse between their work and any in-court identification is a matter for cross examination, and goes to the weight of the evidence – it should not serve to preclude the evidence[1].

Maria Garcia further seeks a hearing based upon a letter detailing some possibly inconsistent witness testimony concerning another defendant, Jose I. Garcia (relying on the letter from Ms. Jernow dated November 18, 2004).  A review of Ryan's affidavit will demonstrate that Jose I. Garcia's picture was only available after his arrest - no other photo of Jose I. Garcia was contained in the photo book.  Therefore, only a few witnesses actually saw a photograph of Jose I. Garcia.

The information concerning the identity of Jose I. Garcia therefore comes primarily from witness testimony.  The perceived inconsistencies stem from various descriptions of the relationship between Jose I. Garcia and Maria Garcia and Elias Botello.  Whether

---

[1] The government has represented to the Court that it does not intend to offer the out of court identifications into evidence.

Jose I. was believed to be Elias' father or uncle is not relevant - what the witnesses will clarify at trial is whether the defendant, Jose I. Garcia, participated in the transporting, harboring, and forced labor of the victims.

Neither the possible inconsistencies nor the time lapse between the events of the Indictment and the trial compel a hearing on the in-court identification issue.  There is no "per-se rule compelling such a [hearing] in any case," Watkins v. Sowders, 449 U.S. 341, 349 (1981).  A court's decision to admit identification evidence is entitled to deference, and will not be disturbed on appeal absent clear error.  United States v. Salameh, 152 F.3d 88, 126 (2d Cir. 1998).

## CONCLUSION

Based upon the foregoing, the United States respectfully requests the Court to deny the motions to suppress any in-court

identification of the defendants by the victims in this case and deny the request for a hearing on the issue.

Dated:   Buffalo, New York, November  28 , 2004.

                          Respectfully submitted,

                          MICHAEL A. BATTLE
                          United States Attorney

            BY:   /S/ GRETCHEN L. WYLEGALA
                  Assistant U.S. Attorney
                  United States Attorney's Office
                  Western District of New York
                  138 Delaware Avenue
                  Buffalo, New York 14202
                  (716) 843-5700, ext. 822
                  Gretchen.Wylegala@usdoj.gov

                  DAVID ALLRED
                  Senior Litigation Counsel
                  Criminal Section
                  Civil Rights Division
                  U.S. Department of Justice

                  ALLISON JERNOW
                  Trial Attorney
                  Criminal Section
                  Civil Rights Division
                  U.S. Department of Justice

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
                                          :
UNITED STATES OF AMERICA,
                                          :
            Plaintiff,
                                          :      02-CR-110-S
      v.
                                          :
MARIA GARCIA (a/k/a "Chabela"),
ELIAS BOTELLO,                            :
JOSE J. GARCIA (a/k/a "JJ"),
JOSE I. GARCIA,                           :

            Defendants.                   :
_____
```

**CERTIFICATE OF SERVICE**

I hereby certify that on November  29 , 2004, I electronically filed **UNITED STATES' RESPONSE TO DEFENDANT MARIA GARCIA'S 11/26/2004 MOTION TO SUPPRESS** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

> Timothy Hoover, Esq.
> Noemi Fernandez, Esq.
> John J. Lavin, Esq.

I further certify that on November  29 , 2004, I have mailed a copy of the attached **UNITED STATES' RESPONSE TO DEFENDANT MARIA GARCIA'S 11/26/2004 MOTION TO SUPPRESS** by the United States Postal Service, to the following non-CM/ECF participant:

> Sean Dennis Hill, Esq.
> 6 North Pearl Street
> Buffalo, NY   14202

                                              /S/ TERESA M. WITSCHI

UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) No. 02-CR-110-S |
| v. | ) |
| MARIA GARCIA (a/k/a "Chabela"), | |
| ELIAS BOTELLO, | ) |
| JOSE J. GARCIA (a/k/a "JJ"), | |
| JOSE I. GARCIA, | ) |
| Defendants. | ) |

## AFFIDAVIT

Kevin R. Ryan, being duly sworn deposes and states that:

1.  I am employed as a Special Agent of the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), formerly the United States Immigration and Naturalization Service (INS).  I have been a Special Agent for the past thirteen (13) years.  I am and have been the case agent for <u>United States v. Maria Garcia et al</u>, since the commencement of the investigation in August 2001.

2.  I submit this affidavit, in response to the defendant's motion to suppress filed on November 26, 2004, to explain the procedure used to show photos to various of the witnesses interviewed in this case.

3.   All the photos shown to witnesses in this case are contained in a green colored file folder numbered as DCN 67.  Each page, which was separately numbered, contains one photo bearing the picture of an individual.  All of the photographs in the book are marked with a sequential DCN number, beginning at 67.01 and continuing until 67.29.  Most of the pages also contain another number, in the lower right hand corner of each page beginning with 1, and continuing until 27.  The last two photos contain only DCN numbers.  For ease of reference, I will refer to the DCN numbers in this affidavit.

4.   Different photographs were added to the photo book at different times.  Photos 67.01 to 67.14 were the first set of photographs shown to witnesses.  All of those photographs depict Hispanic looking men.  The only two defendants depicted in that group of photographs are Elias Botello (67.11) and Jose J. Garcia (67.08).

5.  On March 7, 2002, additional photographs (67.15 to 67.25) were added to the photo book.  Most of those photographs depicted hispanic appearing women, including the defendant, Maria Garcia (67.15) and two additional men (67.16 and 67.18).

2

6. On April 11, 2002, an additional photograph of a woman was added (67.26). On June 18, 2002, arrest photographs of Maria Garcia (67.28) Jose I. Garcia (67.27) and Jose J. Garcia (67.29) were added to the book. A copy of the full photo book is attached as Exhibit A.

7. I used the same procedure in showing the photo book to each witness, and only showed the photo book to a witness following an interview. Prior to showing any photographs, I would tell the witness to let me know if he knew, or thought he knew, anybody pictured. I advised the witness that if he indicated that he knew or thought he knew someone pictured, we would stop, and discuss how he knew or thought he knew that person. Once I believed the witness understood my directions, I would commence showing the photographs, one at a time, beginning with the first photograph, and continuing through the book.

8. I showed each witness all the photographs then contained in the photo book. I showed each witness the photographs in the same order (the photographs are clipped by a binder to the green colored folder). If a witness indicated some familiarity with a

person depicted in the photo, we would stop and discuss that person. I would make notes of the information the witness told me, all of which are contained in my notes (I-166G reports) which have been provided in this case.

9. One witness, Javier Hernandez-Sanchez, was interviewed by another agent in Las Vegas, Nevada in April, 2002. A copy of the photo book (photos 67.01 to 67.26) was provided to that agent, and I advised that agent of my procedure with the photographs, and asked that agent to proceed in the same fashion. My review of his notes of his interview (GX 3557) indicates that he followed the same procedure as requested.

10. Not all of the witnesses in this case were shown the photo book, and not all the witnesses were shown the same set of photographs. Miguel Perez[2] and Lazaro Perez who viewed photographs on December 5, 2001 and December 17, 2001, respectively were shown only photographs 67.01 to 67.14 (men only).

---

[2] I am advised that the government no longer expects to call this witness in its case-in-chief and will be filing an amended witness list at the pre trial conference on November 29, 2004.

11.  At the time of my interviews with Miguel Perez and Lazaro Perez, we had received copies of documents subpoenaed from one of the farms, Howard Produce, which employed Maria Garcia as a farm labor contractor.  Those records included copies of identification documents, including I-551 (alien registration card with photograph) and driver's licenses.  I am aware that the records subpoenaed from Howard Produce were provided to the defendants during discovery.  These two witnesses were asked to go through the subpoenaed documents, and to let me know if they identified anyone depicted by the identification documents.  Both witnesses identified other workers, as well as various defendants, from those documents.  In preparing this affidavit, I realized that 2 pages were omitted from the interview notes of Miguel Perez already provided (GX 3513)  The complete I-166G for that witness is attached hereto as Exhibit B.

12.   Witness Javier Hernandez-Sanchez was interviewed on February 26, 2002.  He was shown only photographs 67.01 to 67.14.  He was interviewed again in Las Vegas, Nevada, on April 16, 2002, at which time he was shown photographs 67.01 to 67.26.  In his first interview he recognized Jose J. (JJ) Garcia and Elias Botello. During the second interview, he provided information about several of the individuals not named as defendants in this case, as well as recognizing Maria Garcia, JJ Garcia and Elias Botello.

5

13. Witnesses Baldemar Cacho and Jonas Geronimo were interviewed on March 14, 2002, and Lazaro Perez-Rodriguez was interviewed again on that same date. Although interviewed on the same date, these witnesses were shown the photo book individually and privately. These witnesses were shown photos 67.01 to 67.25. The same procedure I detailed above was used in showing the photographs, and noting the witnesses' responses in my reports.

14. Witness Marco Cacho Velaz[3] was interviewed on June 12, 2002. He was shown photographs 67.01 to 67.25. He identified Elias Botello and JJ Garcia as well as another person.

15. Witnesses Bonifacio Perez-Ramirez[2] and Daniel Victoria Leon[2] were both interviewed, separately, on June 19, 2003. These two witnesses were shown the now-complete photo book, 67.01 to 67.29. I used the same procedure, detailed above, with these witnesses. Their identification of various of the defendants is noted in my reports of their interviews.

---

[3] I am advised that the government no longer expects to call these witnesses in its case-in-chief and will be filing an amended witness list at the pre trial conference on November 29, 2004.

6

16. Based upon my interviews of the various victim-witnesses, as well as upon my review of interviews conducted by other agents, I believe that each of the witnesses had ample opportunity to observe the various defendants in this case to support an independent basis for any in court identification.

17. Although many of the victim-witnesses are uncertain of specific dates of their work for Maria Garcia, each has recounted his experience with the various defendants, including extensive dealings with Elias Botello in the southwest, prior to embarking on the journey to Albion; spending a lengthy time in the van, driven by Elias and/or Jose I. Garcia over a period of days; meeting with Maria Garcia on a frequent basis while working for her; encountering Jose I and Jose J. Garcia with some frequency while working in the fields, and spending days to weeks working for Maria Garcia and her family.  The witness testimony is buttressed by the documents located, during the execution of a search warrant, in the business area of Maria Garcia's trailer, as well as documents obtained from farmers with whom Maria Garcia did business.  The victims' names appear on paychecks, employment forms, and on internal records showing their work in the fields, and their payments due to Maria Garcia for the trips.  Other witnesses will testify that they encounted the victims at a Garcia property.  The length of the witnesses' travel, the length of their employment,

and the fact that Maria Garcia's records contain documents bearing the witnesses' names all demonstrate that any in- court identification of a defendant by a witness is the product of the witness' experience.

                                                  /S/ KEVIN R. RYAN  
                                                  Special Agent, ICE

Sworn and Subscribed to  
before me this __28__ day of  
November, 2004.

/S/ Gretchen L. Wylegala  
Notary Public County of Erie  
My Commission Expires 12/31/2005